IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel., ) <br> ) <br> KYLE HARRIS ) <br>    14118 LAKE PRICE DRIVE ) <br>    ORLANDO FL 32826 ) <br> ) <br>      Plaintiff-Relator, ) <br> ) <br> v. ) <br> ) <br> WILLIAMS INDUSTRIAL & MARINE, ) <br> INCORPORATED ) <br>    200 SON IN LAW ROAD ) <br>    BONIFAY, FL. 32425 ) <br> ) <br> EAN WILLIAMS ) <br>    200 SON IN LAW ROAD ) <br>    BONIFAY, FL. 32425 ) <br> ) <br> ALLISON WILLIAMS ) <br>    200 SON IN LAW ROAD ) <br>    BONIFAY, FL. 32425 ) <br> ) <br>      Defendants. ) | Case: 1:22−cv−01014 JURY DEMAND <br> Assigned To : Friedrich, Dabney L. <br> Assign. Date : 4/4/2022 <br> Description: Gen. Civil (E−DECK) <br><br><br><br> Case No. _____ <br> <u>Jury Trial Demanded</u> <br> FILED UNDER SEAL |

## COMPLAINT

1. Relator Kyle Harris brings this action on behalf of himself and the United States of America against Defendants Williams Industrial & Marine, Incorporated ("Williams Construction"), Ean Williams, and Allison Williams (collectively, the Defendants), for violations of the federal False Claims Act, 31 U.S.C. §§ 3729 *et seq*., the "False Claims Act".

2. Specifically, Relator alleges that Defendants are defrauding the Small Business Administration (SBA) by lying about their eligibility for certain set-aside contracts.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. §§ 1331, 1345.

4.      Venue is proper in this district under 28 U.S.C. §§ 1391(b) and 31 U.S.C. § 3732(a), as Defendants transact business in this jurisdiction and violations of the False Claims Act described herein occurred in this district.

## GOVERNMENT SET ASIDE PROGRAMS

*Overview of Government Set Aside Programs*

5.      The SBA has stated a goal to help small businesses win at least 23% of all federal contracting dollars each year. In addition to helping them win a fair share of federal contracts, the SBA desires to teach these businesses how to qualify for exclusive set-aside and sole-source contracts; partner with established contractors to win other contracts; and get business monitoring and education in place, to learn how federal contracting works. Unto that end, the SBA has several contracting assistance programs to help small businesses win federal contracts.

6.      Relevant here is the SBA's HUBZone Program, which provides set-aside contracts to participating small businesses who qualify for the program. Intended to fuel small business growth in historically underutilized geographic areas, the SBA has a goal of awarding 3% of federal contracts to HUBZone certified companies each year.

7.      Businesses that falsely certify that they meet program requirements when they do not actually meet those requirements undermine the policy purpose of the programs. Regardless of whether the government receives the goods or services it contracted for from these fraudsters, the government is damaged by the fraud, because the SBA's policy intent—to encourage and grow small businesses—has been thwarted.

*HUBZone Program*

8.      The SBA's HUBZone Program is intended to fuel small business growth in historically underutilized business zones, with a goal of awarding at least 3% of federal contract dollars

annually to HUBZone certified companies.

9. In addition to the opportunity to be awarded HUBZone Program specific set-aside contracts that are only for HUBZone companies, HUBZone companies also receive a 10% price evaluation preference in full and open federal contract competitions.

10. HUBZone certified businesses are also eligible to compete for contract awards under other SBA socio-economic programs for which they qualify.

11. Per 13 CFR § 126.200(a)-(d), to qualify for the HUBZone Program, a business must: (a) be a "small" business as defined by the program (see below); (b) be at least 51 percent owned and controlled by U.S. citizens, a Community Development Corporation, and agricultural cooperative, an Alaska Native corporation, a Native Hawaiian organization, or tribe; (c) have its principal office located in a HUBZone; and (d) have at least 35 percent of its employees living in a HUBZone.

12. Relevant here are requirements (c) and (d), which require HUBZone qualified businesses to certify that its principal office is located within a defined HUBZone and that at least 35 percent of its employees live within a defined HUBZone.

13. For the entire duration of its HUBZone certification, which spans from 2015 to present, Williams Construction has certified to the SBA that empty lots are the company's principal office location.

14. Moreover, since 2015 Ean and Allison Williams' primary residence has not been located within a defined HUBZone, and Williams Construction is believed to have very few employees at all times relevant herein.

15. Williams Construction does not qualify as an SBA HUBZone business. The certifications by Williams Construction that they are HUBZone qualified are false certifications, implicating

the False Claims Act, and Defendants were not eligible to receive HUBZone set-aside contracts.

## PARTIES

16.     **Williams Industrial & Marine, Incorporated** ("Williams Construction") is a Florida registered corporation, formed on December 31, 2003.

17.     Previously known as Roger L. Fisher, Inc., Williams Construction began certifying as an SBA qualified HUBZone business on or about June 19, 2015, through present day.

18.     The company provides construction services to commercial customers as well as local, state, and federal governments.

19.     Williams Construction is registered to do business in Florida, Idaho, Hawaii, Oregon, and Utah, although its Oregon and Utah registrations are inactive.

20.     From January 1, 2015, through February 2, 2022, Williams Construction received $2,368,157 in Federal Procurement Data System ("FPDS") reportable federal government contracts and sub awards. The company also received contract awards worth millions of dollars from other state and local governments.

21.     Defendant Ean Williams is presently listed on Florida and Federal Government business records as the vice president of Williams Construction.

22.     Ean Williams was previously listed on Florida Secretary of State filings as the President of Williams Construction from 2015 through 2018; the 2019 Idaho annual report continued to list Ean Williams as its President.

23.     Likewise, Williams Construction's 2018 Oregon state filings listed Ean as President of the company. Additionally, it appears that Ean continued to conduct business with customers in the same role and manner as when he served as the company's president, despite the title change.

24. Defendant Allison Williams is Ean's wife. She is currently listed as the President of Williams Construction on Florida, Idaho, and Federal Government business filings.

25. Relator Kyle Harris is a Systems Engineer. He received his bachelor's degree in Mechanical Engineering from the University of Central Florida, in 2013. He received a master's degree in Systems Engineering in 2018 from the Stevens Institute of Technology. Professionally, he has been a Senior System Engineer at Lockheed Martin and a Radar Cognizant Engineer at Northrop Grumman, as well as having experience as a Manufacturing Engineer for Wireless Engineering Corporation. Starting in 2018 through the present, Relator has served as the Chief Executive Officer of CaseGuide, Inc.

## FACTUAL ALLEGATIONS

26. Williams Construction was formed on December 30, 2003, as Roger L Fisher, Inc., by Defendant Ean William's parents.

27. Present owners Ean and Allison Williams moved to Florida from Idaho in late 2014, establishing a home address of 200 Son In Law Rd, Bonifay, FL. The 200 Son In Law Road property is located in census tract 12059960400, which was not a HUBZone until after the Williamses left Florida in 2018.

28. On or about February 20, 2015, Ean took over Williams Construction as president.

29. In approximately October 2018 Williams Construction began listing Allison as president on the company's Florida's secretary of state records.

30. Prior to taking over Williams Construction, Ean worked for Performance Systems, Inc., a HUBZone certified construction contractor.

31. Ean left Performance Systems shortly after the company graduated from the 8(a) program, took over his parents' construction business, and renamed the company, Williams

Industrial & Marine, Inc. Soon after, Williams Construction began certifying that it was as a HUBZone qualified business.

32. Since that time, Williams Construction has been awarded $2,282,974.41 in fraudulently procured HUBZone set-aside contracts.

33. For example, on or about March 1, 2016, Williams Construction was awarded a contract (Contract No. HSCG8216CPMV005) from the U.S. Coast Guard with an award amount of $1,075,749.00.

34. Another example, on or about September 13, 2016, Williams Construction was awarded a contract (Contract No. HSCG8216CPMV005) from the U.S. Coast Guard with an award amount of $130,655.00.

35. Another example, on or about January 12, 2017, Williams Construction was awarded a contract (Contract No. HSCG8216CPMV005) from the U.S. Coast Guard with an award amount of $5,000.00.

36. Another example, on or about January 18, 2017, Williams Construction was awarded a contract (Contract No. HSCG8216CPMV005) from the U.S. Coast Guard with an award amount of $132,060.00.

37. Another example, on or about August 20, 2019, Williams Construction was awarded a contract (Contract No. 70Z08819FPQQ20400) from the U.S. Coast Guard with an award amount of $46,304.00.

38. Another example, on or about February 21, 2020, Williams Construction was awarded a contract (Contract No. 70Z08819FPQQ20400) from the U.S. Coast Guard with an award amount of $12,817.41.

39. Another example, on or about March 26, 2021, Williams Construction was awarded a contract (Contract No. 70Z08221FPMV13900) from the U.S. Coast Guard with an award amount of $883,914.00.

40. Williams Construction does not have a principal office location; rather, employees spend a majority of their time on particular job sites. Under 13 CFR 126.103, these employees are not counted toward principal office calculations. Ean and Allison appear to work primarily from either their home address or a job site.

41. In 2015, Williams Construction's began certifying that its HUBZone principal office location was 2515 N Main Street, Westville, FL 32464. This property is located in Census Tract 12059960200 and is located within a HUBZone.

42. Ean and Allison own the property at this address, having purchased it in 2015. However, based on aerial photographs and Relator's personal observation of the property, 2515 N Main Street, Westville, FL was and continues to be an empty lot.

43. In other words, from August 24, 2015, through July 3, 2018, 2515 N Main Street, Westville, FL was certified to the SBA as Williams Construction's principal office location even though it is and was an empty lot.

44. During this same time period (August 2025 to July 2018), Ean and Allison lived at 200 Son In Law Rd, Bonifay, FL 32425. This property was not located within a defined HUBZone during this time period.

45. It appears that Williams Construction operated out of the Williams' home address during this time and not from the vacant lot.

46. In 2017, Ean and Allison and Williams Construction began expanding from Florida, registering Williams Construction in the state of Hawaii (June 2017) and obtaining a Hawaiian construction permit (November 2017).

47. Later that year, in December 2017, the Williamses purchased a property in Idaho and moved to 1106 Pebble Beach Way, Eagle, ID 83616 in approximately January 2018.

48. This property is also not located in a defined HUBZone. The address is frequently listed in state filings and other contract documents. For example, the Eagle, ID address is used by Williams Construction in the following ways:

- as the mailing address for Williams Construction's June 2018 Oregon registration;
- as the mailing and payment address for Williams Construction's May 2020 Hawaii contract bid;
- Idaho Secretary of State filings.

49. In addition to the Eagle, ID address, Williams Construction has used the address 47-510 Mapele Rd House J, Kaneohe, HI, 96744, a property not located in a defined HUBZone, in the following ways:

- as the mailing address for Williams Construction's general contractor license;
- as the mailing address for Williams Construction's contract bid to the state of Hawaii to build a water tank;
- Hawaii Secretary of State filings.

50. Around the time of the Williams's move to Idaho in 2018, Williams Construction began certifying to the SBA that the company's principal office location had changed to 3362 Williams Road, Bonifay, FL 32425.

51. The Williams Road address is also an empty/unoccupied lot, located in a HUBZone, owned by Ean and Allison.

52. Further, as of March 1, 2022, Holmes County, Florida does not have a property with an address of 3362 Williams Road listed in county records. Obviously, with no buildings to work from, the vacant lot on Williams Road cannot be the principal office for HUBZone purposes.

53.     Accordingly, from 2018 to present, Williams Construction's principal office could not have been at the HUBZone address it certified to SBA. Instead, the use of empty lots in rural communities is simply a front to fraudulently obtain set-aside contracts for which it is not eligible.

54.     Since taking over the company in 2015, the Williams's have sought to undermine the intent of the HUBZone program and have succeeded in defrauding the government of at least $2.3 million in HUBZone set-aside contracts for which the company was not eligible.

55.     Williams Construction has never been compliant with the basic requirements of the HUBZone program. The company has certified to the SBA, during two different time periods, that vacant lots are the company's principal office locations. In doing so, Williams Construction fraudulently induced the award of HUBZone set-aside contracts to the company and continues to do so.

## COUNT I
## VIOLATIONS OF 31 U.S.C. § 3729 – FEDERAL FALSE CLAIMS ACT

56.     Relator hereby incorporates and realleges herein all other paragraphs as if fully set forth herein.

57.     As set forth above, Defendants knowingly presented or caused to be presented false or fraudulent claims for payment or approval, in violation of 31 U.S.C. § 3729(a)(1)(A).

58.     As set forth above, Defendants knowingly made, used, or caused to be made or used, false records or statements material to false claims, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(B).

59.     As set forth above, Defendants knowingly conspired to commit violations of the False Claims Act, in violation of 31 U.S.C. § 3729(a)(1)(C).

60. Due to Defendants' conduct, the United States Government has suffered substantial monetary damages and is entitled to recover treble damages and a civil penalty for each false claim. 31 U.S.C. § 3729.

61. Relator is entitled to reasonable attorneys' fees, costs, and expenses. 31 U.S.C. § 3730(d)(1).

## PRAYER FOR RELIEF

WHEREFORE, Relator prays for judgment against Defendants:

(a) awarding the United States treble damages sustained by it for each of the false claims;

(b) awarding the United States the maximum civil penalty for each of the false claims, records, statements, and unlawful acts;

(c) awarding Relator the maximum share of the proceeds of this action and any alternate remedy or the settlement of any such claim;

(d) awarding Relator litigation costs, expenses, and reasonable attorneys' fees;

(e) granting such other relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Relator hereby respectfully demands trial by jury on all issues and counts triable as of right before a jury.

Respectfully submitted,

Nathan M. Peak
District of Columbia Bar No. 978215
**BRACKER & MARCUS LLC**
3355 Lenox Road, Suite 660
Atlanta, GA 30326
Tel. (770) 988-5035
Fax (678) 648-5544
Nathan@FCAcounsel.com